IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

APRIL MARIE CASE                    )
                                    )
v.                                  )          No. 1:17-0032
                                    )
COMMISSIONER, SOCIAL SECURITY       )
ADMINISTRATION[1]                   )

To:     The Honorable Waverly D. Crenshaw, Chief District Judge

## R E P O R T   A N D   R E C O M M E N D A T I O N

Currently pending is Plaintiff's motion for judgment on the administrative record. *See*

Docket Entry ("DE") 18. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration

("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that

Plaintiff was "not disabled," and therefore not entitled to Supplement Security Income ("SSI").[2]

(*See* Administrative Record, DE 14, at 8-10).[3] This matter has been referred to the undersigned,

pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See*

DE 6.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*. Pursuant to Fed. R. Civ. P. 17(d), a public officer who is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill is no longer the Acting Commissioner, the Clerk is DIRECTED to identify Defendant by the official title rather than by name.

[2] Plaintiff states that she also filed applications for a period of disability and Disability Insurance Benefits (DE 18-1 at 1), although her applications pertain only to SSI.

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

Upon review of the administrative record and consideration of the parties' filings, I find no error that would necessitate remand in this case and therefore recommend that Plaintiff's motion for judgment on the administrative record (DE 18) be **DENIED.**

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on November 6, 2013 due to borderline intellectual functioning, social anxiety disorder, and other mood disorders, with an alleged disability onset date of July 2, 2013. (Tr. 54-55). Her application was denied initially and on reconsideration. (Tr. 54, 68). Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ Donald E. Garrison on November 19, 2015. (Tr. 23). On January 14, 2016, the ALJ denied the claim. (Tr. 8-10). On February 3, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision; therefore, the ALJ's decision stands as the final determination of the Commissioner. (Tr. 1-3).

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since November 6, 2013, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: borderline intellectual functioning, mood disorder not otherwise specified and adjustment disorder not otherwise specified (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out short and simple instructions and make judgments on simple work related decisions; have occasional contact with supervisors and coworkers but no contact with the public; cannot perform production rate pace work which is quota assembly line work; and can tolerate occasional changes in work procedures/requirements.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 16, 1994 and was 19 years old, which is defined as a younger individual 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 6, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-17).

On appeal, Plaintiff submits two assertions of error: (1) that the ALJ erred by failing to find that Plaintiff meets Listing 12.05C; and (2) that the ALJ's assigned residual functional capacity ("RFC") is not supported by substantial evidence. DE 18-1 at 9. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *Id.* at 18.

## II. ANALYSIS

### A. Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed.

126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 416.920(a)(4). At Step 1, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at Step 2, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at Step 3, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at Step 4, the ALJ considers the claimant's RFC and determines whether the claimant can still perform past relevant work; and at Step 5, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 416.920(a)(4)(i)-(v).

If the ALJ determines at Step 4 that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 416.920(a). "Past relevant work" is defined as work that claimants have

done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 416.960(b); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to Step 5 to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

**B. The Commissioner's Decision**

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform a full

range of work with express limitations to account for her severe impairments, and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite such limitations. (Tr. 13-17).

## C. Assertions of Error

### 1. Listing 12.05C.[4]

At the time of Plaintiff's application, Listing 12.05C involved an intellectual disorder characterized by three elements: (1) significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested prior to age 22;[5] (2) a valid verbal, performance, or full scale IQ score of 60 through 70; and (3) a physical or other mental impairment that significantly limits the claimant's ability to work. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (citing 20 C.F.R. § 404, Subpt. P, App'x 1). It is the claimant's burden to demonstrate that her condition meets the requirements of the particular listing. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). The claimant does not satisfy the listing unless all of the requirements of that listing are met. *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

With respect to the diagnostic description, "adaptive functioning" refers to a claimant's effectiveness in areas such as social skills, communication, and daily living skills. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe,* 509

---

[4] The Social Security Administration removed Listing 12.05C from 20 C.F.R. § 404, Subpart P, Appendix 1 in January of 2017. However, Plaintiff filed her application for SSI in 2013 and the ALJ's decision was subsequently entered in 2016. The Court will therefore consider Listing 12.05C in its analysis. *See Combs*, 459 F.3d at 642 ("The Act does not generally give the [Commissioner] the power to promulgate retroactive regulations.").

[5] This prong is known as the "diagnostic description" of Listing 12.05. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

U.S. 312, 329, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)). Adaptive functioning is described by the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V") as "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background," and involves "adaptive reasoning in three domains: conceptual, social, and practical." DSM-V at 37.

The ALJ in the instant case concluded that Plaintiff did not have significant deficits in adaptive functioning based on her ability to read, write, count change, obtain a driver's license, drive alone, shop for groceries, clean, and do laundry. (Tr. 14). Plaintiff contends that the ALJ erred by mischaracterizing the record and ignoring evidence that she met the relevant criteria. DE 18-1 at 10-11. Upon review of the record, however, the Court finds no such error.

Plaintiff argues that she meets the diagnostic description based on her involvement in special education courses throughout her time in school. (*See* Tr. 203-67). While these records indicate that Plaintiff qualified for an Individualized Education Program ("IEP") in connection with a diagnosed learning disability and language impairment,[6] participation in a special education program alone does not satisfy the diagnostic description. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) ("[T]his Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two."). The Court notes Plaintiff's testimony that she obtained a "regular" diploma from high school, as opposed to a special education diploma, (Tr.

---

[6] Under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, a school system conducts an initial evaluation to determine if a child qualifies for special education or related services in the form of an IEP, which, assuming the child qualifies, involves creation of a team of individuals to oversee the child's education, which is comprised of the parents, a teacher of the child, a special education teacher, a representative of the local education department, "an individual who can interpret the instructional implications of the evaluation results," and any other individuals with special expertise. *See id.* § 1414(d)(1)(B).

29), which tends to support a finding that Plaintiff does not meet the listing's requirements. *See Chaffin v. Colvin*, No. 2:12-cv-0047, 2014 WL 1317648, at *7 (M.D. Tenn. Mar. 26, 2014) (noting that attainment of a high school diploma favored a finding that claimant possessed adaptive functioning skills); *Gethin v. Colvin*, No. 3:14-cv-53-DW, 2014 WL 4104130, at *12 (W.D. Ky. Aug. 19, 2014) (noting that claimant's completion of high school with a "regular" diploma weighed against finding that claimant could satisfy Listing 12.05C). Even claimants with a history of special education that fail to achieve a high school diploma must put forth additional evidence to establish fulfillment of the diagnostic description. *See Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 642 (6th Cir. 2013) (holding that claimant's involvement in special education classes and failure to finish high school did not establish deficits in adaptive functioning before age 22).

Plaintiff also puts forth little evidence suggesting that she struggles with "personal independence and social responsibility." DSM-V at 37. To the contrary, Plaintiff testified that she is able to read newspapers, books, and magazines, write letters, and complete job applications. (Tr. 30). She further stated that she regularly volunteers at her church, takes part in community events, and shops for groceries. (Tr. 34-35). She has no problems performing any household tasks, such as cooking, cleaning, washing dishes, or doing laundry. (Tr. 34). Plaintiff even testified that the actual reason behind her unemployment was her lack of transportation, a problem which she planned to rectify once she had access to an automobile. (Tr. 35). The ALJ properly relied on such daily activities to reach his decision. *See Griffith v. Colvin*, No. 1:13-cv-2502, 2014 WL 5858337, at *6 (N.D. Ohio Nov. 12, 2014) ("The ALJ's reliance on the [daily] activities described above to illustrate a lack of significant deficits in adaptive functioning constitutes substantial evidence.").

Nevertheless, Plaintiff points to a Vocational Evaluation Report ("VER") completed by the State of Tennessee's Division of Rehabilitation Services in October of 2013. (Tr. 268-78). It is certainly true, as noted by Plaintiff, that the VER highlights difficulty with following instructions and maintaining a consistent "concentration level." (Tr. 276). Yet the same VER demonstrated that she was punctual, cordial, and cooperative with staff and coworkers, with no disruptive behavior displayed at any point during the multi-week evaluation. (Tr. 275-76). The evaluation also concluded that Plaintiff's "ability to survive and thrive on a new job" was in the average range. (Tr. 273-74). Such evidence appears to support the ALJ's determination that Plaintiff has no more than moderate restriction with respect to activities of daily living and social functioning. (Tr. 13-14).

The Court also notes that Plaintiff fails to identify any evidence that she has ever been diagnosed with an intellectual disability.[7] While this is not fatal to Plaintiff's argument, it does weigh against a finding that she meets the requirements of the listing. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) ("Although [a] [mild mental retardation] diagnosis is not a necessary prerequisite to satisfy Listing 12.05, its absence is probative for a 12.05C determination."). Plaintiff has instead been diagnosed as having "borderline intellectual functioning" ("BIF") despite receiving a Full Scale IQ score ("FSIQ") of 62 (Tr. 269-70), which represents a less severe condition than "intellectual disability" and implies an inability to satisfy the diagnostic description. *See Sheeks*, 544 F. App'x at 641 (noting that BIF is "a lesser diagnosis than mental retardation"); *Uleski v. Comm'r of Soc. Sec.*, No. 1:13-cv-2023, 2014 WL 2114814, at *5 (N.D. Ohio May 20, 2014) (holding that multiple diagnoses of BIF, and not

---

[7] The phrase "intellectual disability" has replaced the previous term, "mental retardation," in Listing 12.05. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 428, n.2 (6th Cir. 2014). The Court uses the latter term out of necessity when referencing cases decided before this change.

intellectual disability, "provides substantial evidence [] that [claimant] did not meet or equal Listing 12.05, particularly the [diagnostic description]"). Furthermore, Plaintiff has received a separate FSIQ score of 80 (Tr. 241), which provides additional support for the diagnosis of BIF. *See Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 460 (6th Cir. 2007) (quoting neuropsychologist's finding that a score of 80 placed her in the "borderline to low range of intellectual functioning"); *Sparks v. Astrue*, No. 06-461-GWU, 2008 WL 4186880, at *6 (E.D. Ky. Sept. 10, 2008) (noting that a FSIQ score of 76 was "within the borderline range of intelligence").

Because the burden of proof is on the claimant at step 3, Plaintiff must show that the ALJ's finding that she does not meet or equal Listing 12.05 could not have been supported by substantial evidence. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir. 1987). However, there is ample evidence in the instant matter to support the ALJ's conclusion as to Listing 12.05C, including Plaintiff's own testimony. The ALJ discussed how Plaintiff's daily activities and social functioning failed to establish the existence of deficits in her adaptive functioning (Tr. 13-14), which, in conjunction with Plaintiff's diagnosis of BIF, provide substantial evidence to support the ALJ's conclusion that Plaintiff has not satisfied the diagnostic description.[8] The undersigned therefore rejects this assertion of error.

**2. The RFC.**

Plaintiff next contends that the RFC is not supported by substantial evidence. Plaintiff argues that the ALJ failed to properly consider the opinions provided by the State agency physicians in this matter, asserting that the ALJ failed to "fully and fairly" develop the record.

---

[8] In light of this finding, the Court declines to address the remaining two prongs of Listing 12.05C.

DE 18-1 at 13-16. Plaintiff further claims that the ALJ failed to ascribe an RFC that accommodates Plaintiff's moderate difficulty in both social functioning and maintaining concentration, persistence, and pace ("CPP"). *Id*. at 16-18.

Regarding the ALJ's alleged failure to develop the record, Plaintiff faults the ALJ for not discussing the "validity" of the aforementioned FSIQ score of 62, which was determined by Senior Psychological Examiner Doug Mays in May of 2013. (Tr. 269). Plaintiff fails, however, to cite any regulation or case law suggesting that an ALJ is required to explicitly endorse or reject an FSIQ score, and instead cites a portion of Social Security Ruling ("SSR") 96-6p regarding the ALJ's right to accord greater weight to a State agency physician's opinion than that of a treating source if the former opinion is based on a review of the complete case record. *See* DE 18-1 at 13-14. Yet Plaintiff points to no opinion from a treating physician, nor does Plaintiff contend that the opinions of Drs. Frank Kupstas and Robert Paul, the State agency physicians whose respective opinions were given "partial weight" (Tr. 16), should have been accorded less weight. Plaintiff instead suggests that because Drs. Kupstas and Paul both opined that the FSIQ score of 62 was likely invalid (Tr. 48, 61), these State agency physicians did not have access to a valid score and, consequently, to a complete case record. DE 18-1 at 14. Plaintiff cites no authority, however, indicating that a valid FSIQ is required as part of a State agency physician's consideration. Moreover, these opinions were clearly based on a comprehensive review of the record based on the observation from both physicians that the FSIQ score of 62 "does not correlate [with] previous test scores" (Tr. 48, 61), a reference to prior testing in which Plaintiff exhibited an FSIQ of 80. (Tr. 241).

Plaintiff's related argument that the ALJ erred by failing to require a consultative examination is similarly unpersuasive. It is well-established that an ALJ has the discretion to

facilitate a consultative examination, but is certainly under no obligation to do so. *See* 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). *See also Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). Plaintiff argues that the ALJ improperly relied on the opinions of Drs. Kupstas and Paul because they did not have access to records documenting her treatment with Centerstone Mental Health Services ("Centerstone") between June of 2014 and October of 2015. (*See* Tr. 405). Plaintiff fails, however, to explain how such records undermine the opinions of these State agency physicians or the limitations contained in the RFC. *See Vanarnam v. Comm'r of Soc. Sec.*, No. 12-14397, 2014 WL 1328272, at *24 (E.D. Mich. Mar. 28, 2014) ("Plaintiff fails to explain ... how those records contained findings inconsistent with [the non-examining physician's] opinion that plaintiff could perform a limited category of light work.").

Moreover, the ALJ discussed the Centerstone records in detail in his written opinion, which included a reference to Plaintiff's admission that she was "just lazy" and did not want to pursue employment. (Tr. 15-16, 484). The Court also notes that the vast majority of the Centerstone records document treatment that focused on Plaintiff's anger management (*see* Tr. 412-515), a condition that is addressed both in the ALJ's determination that "mood disorder" and "adjustment disorder" represent severe impairments (Tr. 13), as well as the RFC's restrictions regarding contact with co-workers and the general public. (Tr. 14). Furthermore, the records consist primarily of subjective reports of Plaintiff's mood and contain no opinion as to any work-

related limitations, the absence of which undermines Plaintiff's argument regarding the impact of such records. *See Parmley v. Colvin*, No. 14-121, 2015 WL 3619212, at *4 (E.D. Ky. June 9, 2015) ("The mere diagnosis of a condition does not necessarily establish a work-related limitation.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal citation omitted).

Plaintiff's additional claim that the ALJ should have obtained a consultative examination based on the absence of Dr. Mays' evaluation in the administrative record distorts Plaintiff's own responsibility, as the "burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw*, 803 F.2d at 214 (internal citation omitted). Indeed, counsel for Plaintiff was advised during the hearing that it was within counsel's discretion whether to obtain a copy of Dr. Mays' report for consideration by the ALJ, (*see* Tr. 28), an option that counsel apparently declined to pursue. Therefore, in light of the ALJ's acknowledgement and consideration of the Centerstone records, the Court finds no error in the ALJ's refusal to procure a consultative examination. *Cf. Blakley*, 581 F.3d 399, 409 (holding that more than 300 pages of medical records documenting claimant's ongoing treatment following issuance of opinion from a non-examining source required "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record").

Plaintiff finally asserts that the ALJ's finding that Plaintiff has moderate difficulty in social functioning and CPP is incompatible with the RFC determination. In support of this contention, Plaintiff does little more than regurgitate the findings of the State agency physicians

and those contained in the VER before claiming that the RFC lacks the support of substantial evidence, "[s]ince the ALJ afforded only partial weight to the [State agency physicians'] opinions and there are no other examining opinions from a treating source or consultative examiner[.]"DE 18-1 at 16-18. First, Plaintiff's restatement of the evidence does little to demonstrate the ALJ's decision lacked substantial evidence. *See Peterson*, 552 F. App'x at 540 ("Merely marshalling evidence to suggest that [claimant] is disabled, however, is insufficient; to prevail on appeal, [claimant] must demonstrate that the ALJ's determination that [she] was not disabled is not supported by substantial evidence."). Furthermore, to the extent that Plaintiff faults the ALJ for failing to procure an opinion from a treating source, the Court reiterates that the "burden lies with the claimant to prove that she is disabled." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353). *See also Gerrick v. Comm'r of Soc. Sec.*, No. 15-cv-12998, 2016 WL 5369620, at *2 (E.D. Mich. Sept. 26, 2016), *aff'd*, 2017 WL 5992235 (6th Cir. Aug. 14, 2017) ("The Claimant has the burden to seek out specific evidence to support her claim.") (citing *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S. Ct. 2287, 2303, 96 L. Ed. 2d 119 (1987)).

Finally, the ALJ is not required to adopt "wholesale" the limitations recommended by State agency physicians in the ascribed RFC, even when the opinion is accorded great weight. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Indeed, it is the responsibility of the ALJ to formulate the parameters of the RFC. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC."). Plaintiff cites no authority to the contrary. Therefore, the Court finds that substantial evidence supports the ALJ's decision.

### III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 18) be DENIED and the Commissioner's decision be AFFIRMED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:

*J. Gregory Wehrman*

United States Magistrate Judge